Good morning again, counsel. The panel has changed, but we're ready to go. So please, Ms. Nolas, call the case. Thank you, Judge. The next case today will be 22-1787, United States v. Jovan Vavic. Will Attorney Divisentes please come up and introduce yourself on the record? Good morning, may it please the Court. Alexia Divisentes on behalf of the United States. If I may, Judge Helpe, I'd like to reserve three minutes for rebuttal. Okay. You may, and before you begin, I do have one question, but I don't want to interrupt you. So let me start with my question, and you can answer it whenever you can during your argument. But I realize that some of Vavic's arguments rely on the premise that the jury disregarded the district court's instruction. And my question is simple. Isn't there a presumption that the jury follows the district court's instruction, but less indicated otherwise? I know that's part of the brief, but there's a lot of issues. So if you have an issue you want to address first, but please address that issue and pull it apart. But counsel also might want to address that issue. So with that being said, let's start from the floor. There is indeed a presumption that juries follow the district court's instructions, and that presumption comes into play here both in regard to the argument regarding the misstatements of law and in regard to the Count 16 Yates argument. If I may, I'll start with the misstatements of law, because there was nothing improper here about the government's rebuttal arguments regarding payments to the university accounts. And we are here today because the government is challenging the district court's determination that there was something improper, both about its arguments regarding the law and the arguments regarding the facts. On the arguments regarding the law, these instructions were heavily litigated up to and through the charge conference here, and very experienced defense counsel who did twice object during the government's closed rebuttal did not object to a single one of these alleged misstatements of law. We would submit that the reason is clear, and it's because context refutes the notion that the government was suggesting that the jury could convict the defendant without regard to the contrary to interest instruction. We set out in detail in the brief how each of these statements was directly responding to points that the defense had made in closing and have to be understood in that light. And furthermore, these statements were accompanied by, in some cases, in fact, embedded within the very contrary to interest requirement that the court had found that the government was effectively asking the jury to ignore. This court has repeatedly said that context matters, and this context suggests that contrary to the defense suggestion, the government's argument here was never that any misrepresentation was per se contrary to the university's interest. It was that these misrepresentations were powerful evidence that, in fact, the contrary to interest requirement was satisfied here. As all parties to this case agreed, USC's interests were as USC defined its interests, and those interests were reflected in the separate processes that it had put in place to consider athletic talent through subco, and the potential for philanthropic contributions through the VIP list. Can I just ask you to focus on specifically, if we sort of assume, let's for the moment say the district court, we have to defer to the district court's judgment, especially about context and how the jury may have heard statements that were made and their reactions, so let's assume that in terms of context we disagree with you, but can you really focus in on whether those errors would have impacted counts 3 and 16, since you're not appealing on count 2 in any event? So even if the government did get the law wrong in those particular statements, does that impact the conviction on count 3 and the conviction on count 16? Our argument is no. I do, though, want to note that this court's review of whether or not the government misstated the law or facts is de novo, and context is part of that consideration. As this court has routinely said, context frequently determines meaning. Even assuming, though, that the court were to find that the government somehow misstated the jury instruction, and that's the important point here, whether or not the government was effectively urging the jury to disregard the instruction as given. Even if the court were to find a misstatement in that regard, our argument is that a court could not find that those misstatements would have impacted the jury's verdict. The district court here, there are well-established factors for conducting the poison the well inquiry, and the district court here referenced none of them. And when those factors are applied, there is no reasonable probability of a different result for various reasons. First, to Judge Helpe's initial question, there is a presumption that juries follow the law. And the court here, first of all, instructed that the jury had to follow its instructions on the law, but then also instructed that that law required the jury to find that the payment was contrary to the university's interests. Moreover, even beyond the court's instructions, it's worth noting that the last thing, in fact, that the government said to the jury here was that if the jury found that the defendant agreed to recruit students in exchange for the tuition payments, then he was guilty no matter what the jury thought of the university payments. And the jury verdict here shows that the jury found exactly that. On overwhelming evidence, both that this defendant had recruited Vanessa Highwell in exchange for payments, the tuition payments for his son, and based on the January 2, 2019, call in which the defendant clearly states in response to Stenger's question, can I still holler at you because of what we've done in the past with the scholarships for your boys, he said, absolutely, absolutely. Again, going back to the idea of the jury and the court's instructions on the law here, the court's instructions on the law very clearly told the jury that in order to convict on count 16 or any count, it had to find that these statements were in furtherance of the fraud. And the jury's conviction on this count confirms that, in fact, it found that this call was in furtherance of the fraud, and there's only one way you could do that, and that's if you agree that part of the fraud entailed the receipt of bribes in the form of the tuition payments. Now, to address the defendant's argument here, I think it's worth pointing out that our position on count 16 holds, even if you believe that from the other evidence, the jury might have inferred that in addition to the tuition payments, there might also be payments in the form of payments to the university accounts. This point is made clear in Zant v. Stevens, which the defendants relied on below. That case clearly establishes that the mere possibility that the jury might have relied on both theories is only an issue if one of those theories is effectively arguing that constitutionally protected conduct is illegal. And where that is not the case, the question is just whether the jury relied exclusively on the invalid theory. And count 16, again, confirms that the jury did not. In addition to the fact of the court's instructions here regarding the in furtherance requirement, I do want to address the suggestion that the government's argument somehow suggested that the jury could convict on all counts on the basis of the university payments alone. As we pointed out in the brief, all counts are the defendant's words, not the government's. In the government's words, count 16 was a separate count of honest services fraud that was based on the January 2, 2019 call. The government repeatedly described that call as being one in which the defendant agreed to recruit additional students in exchange for tuition payments. The redacted indictment did the same thing. The court's instructions did the same thing. All clarifying, making clear to the jury that count 16 was based on that call. What about count 3, counsel? Excuse me? What about count 3 and the defendant's arguments about why all sort of the evidence on counts 2 and 3 overlapped and therefore the problems with count 2 must have caused problems with count 3? Well, as an initial matter, the government's view here is that if it reaches the conspiracy issue, we have proved the narrow count 2 conspiracy and the count 3 conspiracy and that at the very least, there was no prejudice so severe that a miscarriage of justice looms in light of the overwhelming evidence in this case, which you will note in our brief that the evidence that we are relying on for that overwhelming argument, overwhelming evidence argument, is all evidence coming from the defendant himself. It doesn't rely on any other evidence. But the government's frontline position here is that to the extent that the conspiracy argument is in front of the court at all, it nonetheless doesn't provide an alternative basis for affirmance. You'll note that much of the defense argument on this issue is merely repackaging arguments that he made and the district court rejected in the context of his motion for judgment of acquittal based on insufficiency of the evidence. And the defendant has conceded that there's no jurisdiction to revisit the denial of that motion. Though he's now framing his arguments in terms of a prejudicial variance and spillover, you can't get to those arguments without first determining whether or not the evidence was sufficient to prove the count 2 or count 3 conspiracies. And even if, as we've indicated, the government narrowed the count 2 conspiracy, whether the evidence was sufficient to prove that narrowed count 2 conspiracy. Moreover, I'll also note that even if there were a basis for jurisdiction here, which the defendants haven't explained in their brief, it's still nonetheless not an appropriate alternative grounds for affirmance for several reasons. First, lurking behind this carpenter question is the question of the appropriate remedy in the event that there is a prejudicial variance of the sort that the defendants are alleging. The court in Abdulaziz specifically left this question open in a footnote in the opinion. The panel at argument was very skeptical about what the result may be. It's also the subject of a circuit split. Second of all, and as this court has made clear, it can affirm it on an alternative basis that's manifest from the record. And how this is manifest from the record when the district court itself considered and rejected the very antecedent argument that one has to address to get to their arguments here is entirely unclear. And moreover, and relatedly, this analysis of the scope of the evidence to prove the conspiracy, what the evidence ultimately did prove, what evidence would still come in, even if all we prove is the narrow. This is a highly fact dependent question. And it's one that this court can consider on direct review of the defendant's conviction. And if and when we get to that point. So I'm happy to discuss the merits of the conspiracy issue. But the government's perspective is that it's not properly before the court. And even if it is, not a proper alternative basis for affirmance. So let me ask you, and you mentioned I had a question, but the fact that the Rule 29 motion was denied, your position is that that would trump Rule 33 argument, correct? Our position is that the defendant hasn't put forth any argument as to how, even though he's reframing this in the Rule 33 context, we can revisit what is effectively a Rule 29 argument. And then again, even if there's some jurisdictional hook here that the defendants haven't explained, why the court should go here now when the defendant can make these arguments, as I will note, every defendant in every case that he's relying on did in the context of a direct appeal. Okay, but what I'm saying is, I don't think when Rule 33 was approved, it was a second bite of the apple for a failed Rule 29 that could go up in the field, am I correct? That's your position? I'm sorry, I didn't quite catch part of that because the buzzer went off. No, the Rule 33, my question is, was not intended as a second bite of the apple for a failed Rule 29. It's a second bite of the apple for a Rule 29 that's going to go up in the field, correct? That's your position? That is precisely the government's position, Judge Helpe. Okay, thank you. You have three minutes for rebuttal. Let's hear that from counsel Harris. Attorney Harris, please introduce yourself on the record. Thank you, and may it please the court. Sarah Harris for Appellee Jovanvavich. This highly unusual prosecution featured trial errors so severe that the District Court rightly took the rarest step of granting a new trial for four reasons. That was no abuse of discretion. First, I'd like to start with the prejudicial variance conspiracy argument. The government is now saying there is somehow no jurisdiction to consider this argument. But that is plainly incorrect, both under this court's Abdelaziz case and under Falcon-Nieves. Two decisions that held that when there is a prejudicial variance, that is grounds to vacate the conviction and order a new trial. That's why in Abdelaziz, this court vacated the convictions on that basis and ordered a new trial, and why this court in Falcon-Nieves carefully distinguished between this ground for a new trial and grounds that there was no conspiracy proven at all, which was a Rule 29 argument. So it would take superseding both of those recent precedents to accept the government's argument here. And second of all, there's no shift in positions or anything going on here. You can look at page 1 and page 16 and some other pages of our Rule 29 and Rule 33 motion, where we very clearly said that this is grounds at a minimum for a new trial, the prejudicial variance. Now, the government also does not address arguments that they conceded related to the conspiracy or grounds for a new trial. The Petrozzello hearsay issue and the Rule 403 issue. Those are classic evidentiary issues that are grounds for a new trial. And this is the classic case for a prejudicial variance because, as in Abdelaziz, the government charged a very broad nationwide conspiracy and failed to substantiate that at trial, meaning, I mean, they're not even defending the count to conspiracy count. They're just trying to stick with USC-specific counts at this point. But if you look at what happened at trial, there's like three-plus days of evidence at the start of trial where witnesses outside of USC, Rudy Meir at Yale, Bruce Isaacson from UCLA, are just up there testifying about transactions and things that have nothing to do with Coach Babich, that he knows nothing about. Counsel, how can we consider your prejudicial variance argument as you framed it right now in light of our decision in Carpenter, which very squarely said that we didn't have jurisdiction? Right. So we agree with the proposition that Rule 29 arguments are not before this court. But we are saying, in light of this court's holdings in Abdelaziz and Falcon Nieves, that this is not a Rule 29 argument because this court held so. The prejudicial variance is not a Rule 29 argument. But as you're opposing, as the government has argued, you know, really sort of the lens through which you're making all of those arguments is the sufficiency of the evidence type claim. I think the parts of Abdelaziz that you've cited to in your brief often cite to that part of the discussion and the decision, the sufficiency of the evidence discussion. So can you explain why you think the government is wrong on that point? Yes, and I think Falcon Nieves is the easiest. Just because a component of a test involves the sufficiency of the evidence does not mean that it is by definition a Rule 29 argument. Again, that is why in Falcon Nieves, this court said, when evaluating a prejudicial variance, it did all the three steps, starting with the sufficiency of evidence to prove the broader conspiracy. But the ultimate question of whether there's prejudicial spillover, etc., is the legal type question that shows that the trial was unfair, grounds for a new trial. And again, that's why this court carefully distinguished between prejudicial variance equals new trial versus arguments that are saying there's no conspiracy proven in any shape or form at all, which this court said are Rule 29. So again, we have no quibble with Carpenter. We agree that were this a Rule 29 issue, that would be a problem, but we're saying there are two very on-point cases from this court that say this type of issue is not, in fact, a Rule 29 issue. It's a new trial issue, and that is why in Abdelaziz, the parties got a new trial. They did not get Rule 29. And again, I think this is really important because the government has very little defense of how there could not possibly be a prejudicial variance here, and it's very hard to see how there would not be a need to affirm on the new trial grounds on all of these counts. Again, what we have here is a case that was tried largely through hearsay, and huge swaths of it are about people who have nothing to do with my client, who are at different schools, who are proceeding, if anything, in tandem. I mean, again, exactly on all fours with the situation in Abdelaziz. And this court just held that that was a serious problem, especially when there's a lot of hearsay evidence that raises the risk of a guilt-by-association prosecution. What about Count 16, though? How did any of the arguments that you're making right now apply to Count 16, which was obviously not a conspiracy charge and was based on a very specific January 2, 2019, phone call? So a couple points there. One is it's just like in Abdelaziz. There were also standalone accounts there. And the real problem here is the culpability issue, right? When you have people like Rudy Meredith, the Yale soccer coach, or Bruce Isaacson, the UCLA parent, who are not in a conspiracy with my client, who are doing much worse things than they're testifying to on the record, who are up there in front of the jury saying, I knew all along this was wrong. I had guilty intent. And when the government gets up in closing and says, you know my client was guilty because you heard from Bruce Isaacson. He knew what he did was wrong. That goes to culpability not just with respect to Count 2 and Count 3 with respect to the conspiracy, but obviously the underlying substantive counts, which require corrupt intent and intent to deprive USC of honor services. Now I also just want to address Judge Helpy's question at the outset on Count 16 because I think the government is misframing what the standards are on this. The jury instructions did not tell the jury, you can only convict a defendant if you think that this was about tuition payments. The jury instructions, I think, are actually very helpful to us on this count because what they do is they tell the jury, you need to find for jurisdictional purposes that there is an interstate wire. And to get venue in Boston, the phone call has to be in furtherance of the scheme that's charged. So that's what the jury's instruction, that's what the indictment says. The problem for the government is in furtherance of is a fairly lax requirement. This court's case in Piper is a good illustration of it. You just need to find that there's something on the call that somehow helps the underlying scheme charge. But the jury is instructed with respect to what the scheme actually is. Throughout the instructions, I think JA 5.272 and .264-65 are good places to look. They're told for Count 16, look at what the court just said on Count 2 with respect to honest services fraud. The scheme that's charged is not confined to the tuition payments. It is either the university donations or the tuition stuff. The jury does not have to find that the call somehow encapsulates honest services fraud. The call itself obviously is not charged as honest services fraud. At that point, Singer is an agent of the government. There's not honest services fraud on that call. And the government itself acknowledges this in its briefing below. It said the in furtherance of requirement for this call was satisfied in part not because of tuition payments or that this call was somehow the be-all and end-all of defining the scheme, but because the government said, well, this call is helpful to this scheme because Coach Babich was updating Singer about things going on at USC. So I think there's like a little bit of revisionist history going on about what the jury had to find on this count, which is clearly not that this one call encapsulated the entire scheme. The jury was instructed the opposite. Okay, counsel, let me ask you a question. Those jury instructions, they were not objected, correct? Or were they objected? We objected but not on this basis because we thought the jury was properly instructed on this. Okay, now my question is, if a jury is properly instructed, and again, I sat on the trial court 15 years, probably more, and jury jurors are presumed, if I'm not correct, that they follow the jury instructions. And let's assume also if counsel makes a misstatement of law, a statement of fact, district judges always, as far as the instructions say, you follow the law as I give it to you, not as counsel says, and as facts, if what counsel is saying is not what was presented at trial, you ignore that. It's what your recollection is. So I want to ask you from that practical trial experience perspective, isn't your argument a little bit uphill because it's presumed that the jury followed the judge's instructions? So I don't think it's uphill. I actually think it's helpful to us, and here's why. We are saying that the jury instructions on the pages I cited, so JA5-264-65, 272, a couple others, the jury is not told you have to treat this call as if it encapsulates the entire scheme. The jury is instead instructed you have to find the call is in furtherance of the charge scheme. So the jury is instructed the charge scheme is either tuition payments or, on the other hand, university donations, and that's the problem for the government. The jury could very easily follow those instructions and find that the call is in furtherance of a scheme for university donations, the in furtherance of requirement. I mean, I think this is the one case the government is trying to argue that the in furtherance of requirements and the interstate wire somehow narrows the scheme charge. And so, again, I think that the district court is right. I mean, that's a big problem for the government's argument on this, and with respect to this standard group review point on this as well, the government ignores that in Abdelaziz, the court did reiterate the impossible-to-tell standard that if you can't tell which ground the jury chose, you have to vacate. And even if the government were right that harmless error should apply, they're drastically watering down the correct standard. They cite the Nader case on this. The Nader case says that you need to have beyond a reasonable doubt that the outcome wouldn't have been different, and when the issue like here of the tuition payments are disputed, you can't find that. But just to go back to Judge Helpe's question on the instructions, again, and just what the district court considers and what... Could you slow down? I didn't quite understand that point. You said it's not disputed that tuition payments are disputed or not disputed. Sorry, sorry, they are disputed, and I'm very sorry, Judge Stemsen. The tuition payments were hotly disputed at trial, both with respect to whether they were a quid pro quo and whether there was an impropriety in the recruitment of Vanessa Feierl. And under the Nader case, which is the case the government is citing that they think encapsulates the harmless error standard in this case, when something like that is disputed, and there could be a jury that could have found our way on this, which we submit is manifestly the case in this case, you cannot find harmlessness. So even if the government were right, which we say they're not, they could not get to where they want to go on Count 16. But wasn't the jury charged with resolving whatever conflict you're saying was disputed? So we're in a world where you have to... It's almost like a sort of hypothetical world, and actually I think this goes to why we're right on the law. You have to imagine what a jury would have done and whether there is a possible world where the jury could have found our way with respect to the tuition payments. You're sort of setting aside what the jury actually did because you know that the jury... There was a problem with the way the jury was considering the issues. It's the harmlessness inquiry that requires you to kind of step back and ask yourself, was there a sufficient dispute that could have gotten there? And just one more, just to briefly go back to Judge Helby's question with respect to deference to the district court, what the district court's observing, whether that supersedes jury instructions. I do want to mention, I think that really comes to the fore for the independent ground for the district court's ruling here, which is not just misstatements of law in closing but misstatements of fact in closing coupled with the recurrent appearance of false evidence, false statements by Singer, who is like the linchpin of this case, throughout the trial. The district court had a bird's-eye view of the effect of those statements in combination and said at GAD 40 and 41 that there is just too substantial of a risk that the jury convicted based on false evidence, based on everything that had transpired. And again, that alone would be basis for affirming the district court's judgment. This was an issue that played out throughout the trial. The government has an obligation not to present false evidence. Their minimal efforts to try to clean some of this up were inadequate, given that... Well, weren't those minimal efforts agreed upon? No, just to be very clear on what happened, we objected, first and foremost, preserve the objection, that these statements should not come in at all. So at the point when we said, well, you know, should there be some sort of corrections, that's already like the third best option we're left with. Our argument all along has always been you cannot have a jury deluged with false statements, especially in a trial-by-hearsay situation, because it's playing with fire. You're running too much risk that the jury is going to take those statements as true, even the corrections the government did were then sort of completely undone in the closing when the government said things like, he's my guy, you played the part where Singer says on a call, he's my guy, you know that's true, where the government later says on the call that's full of lies, this is exactly how the scheme supposedly worked. They're vouching for its truth, and that's an incredibly prejudicial thing, and that's why the district court repeatedly throughout trial says at the conclusion of trial, expresses serious concern that the government is asking the jury to accept Singer's statements for their truth, and not only their truth, but a supposed proof of how the scheme works, when the very thing the jury is asked to focus on is a statement where Singer lies that Coach Babich supposedly had his kids get into college because of Singer, that Singer lied that Coach Babich supposedly had his whole team funded by Singer, and that his travel was paid for. Those are all incredibly damaging things about someone that obviously weigh upon whether you think they're guilty or not across all accounts. So for the government to say in closing, focus on this stuff, without saying, by the way, this is sort of a foundation of lies, the district court was correctly extremely troubled by that, and again, I think gets a lot of deference for the assessment that that set of lies, in combination with the government's own factual misstatements about the transactions, and whether or not Coach Babich agreed to $100,000, was a huge problem that tainted the jury's consideration of the evidence. And so, again, I think this case presents a lot of different paths to affirmance. The conspiracy count, just in light of Abdelaziz, is perhaps the cleanest one, because there is clearly jurisdiction under both Abdelaziz and under this court's Falcon Nieves decision, and if you go through the counts, I mean the district court's analysis predated Abdelaziz and is clearly untenable in light of that decision, just as a matter of law. But we would respectfully ask that the court affirm on any one of these counts. Okay, thank you, Counsel. And Ms. DeVincentes, you have three minutes for rebuttal. Alexi DeVincentes for the United States. A few quick points here. First of all, the various cases that Defense Counsel is relying on to suggest that this conspiracy issue is properly before the court, you will note, are both cases in which this question was addressed in the context of a direct appeal of the defendant's conviction. For the reasons we've stated, we don't believe there's jurisdiction, we don't believe it's a proper alternative ground for affirmance, but, of course, even if you do get there now, the evidence shows that the government did prove the charged conspiracies, and moreover, contrary to the suggestion, the evidence here was overwhelming. This defendant was caught on tape agreeing to recruit a student he knew was not a real recruit, because that student was going to go through Donald Heinel, who had no legitimate role in recruiting. And moreover, he was caught on tape agreeing to recruit additional students in exchange for tuition payments. I will say, though, however, whatever the court chooses to do with the conspiracy issue, we would urge the court to address and reject the district court's finding that the government misstated the law or facts, because that is effectively a finding of government misconduct that is unwarranted here. First of all, there's no basis for finding that we misstated the facts. The inference that Babich agreed to recruit Junaes in exchange for $100,000 to the Waterpolo account was an entirely fair inference from the facts, an inference that the government set out in closing and then was entitled to take to the bank in its rebuttal. Second of all, the notion that this trial was somehow riddled with false statements from Singer, I mean, here again, context matters. And as has been pointed out, yes, the defendant wanted these calls out entirely, but once the district court rejected that premise, which was a ridiculous one, just because there are lies in a call doesn't mean that the calls get left out entirely. Once that was off the table, the defendants, they wanted these false statements, and they specifically said as long as they're cleared up in real time, they're good for us. We then proceeded to clear up the statements in real time, pursuant to a procedure that the defense was affirmatively advocating for, never once objected to, and never later suggested somehow did something, was somehow insufficient. Counselor, can you address the argument that the jury instructions on Count 16, because they talked about a finding in furtherance of a scheme, and the scheme could have been both the payments to the university accounts and the payments for tuition for his sons, that Count 16 is also impacted? Can you just address that very specific point? What I haven't yet heard is an explanation for how a jury that is hearing a call that discusses only payment, only tuition payments, could find that that was in furtherance of the scheme without finding that the tuition payments somehow involved, perhaps in addition to the university payments, but at the very least involved, bribes in the form of tuition payments for the defendant's child's tuition, private school tuition. Sorry, we seem to have lost Judge Helpe.  I'm here. Sorry, we can't see you anymore, Judge Helpe. So, in our view, the Count 16 conviction takes care of any problem with Count 16, and it also clarifies that for purposes of Count 3, there could be no reversible error, even if you did find a misstatement of law or fact. And just to circle back, I've addressed the misstatements of fact. If I understood their argument, I thought your sister counsel was saying that there was dispute over whether the tuition payments were, in fact, adequately demonstrated, and therefore, if you discount the tuition payments, then the jury would have been relying upon the payments to the university. There was dispute about whether or not the defendant agreed to recruit Vanessa Highwell in exchange for the tuition payments, but what there can be no dispute about is what Favage unequivocally stated in that call, which was that he was willing to recruit additional students in exchange for those tuition payments. Thank you, counsel. One other question. Counsel, when the purported or alleged misstatements of facts, they were not objective, correct, or wrong during the arguments, correct? The misstatements of facts, specifically? Yeah, the purported misstatements of facts. They were a contemporaneous objection when they were made during closing arguments. Oh, during closing arguments? No, none whatsoever. Not only did the defendants not object at the point that we were engaging in this corrective procedure, that you'll note they themselves were advocating for with respect to the admission of this call regarding Augustine Athenaeus. No objection, and moreover, worth noting is the fact that the specific statements, I mean, setting aside the fact that they didn't object, these false statements were clarified. There was evidence that Johan Bavic's children did not go to school all across the country. There was evidence that there was no evidence in Singer's books that he was putting staff on his books. Let me add also, they were not objective, I must assume, and I would have to go back to the transcript, but I would assume that in defense counsel's closing arguments, they responded to those statements, am I correct? Those particular statements were never mentioned again. I mean, we've gone through the procedural history in great detail here, because I think there's a misimpression left by the defense brief that suggests that we prove these things false, but then we're wielding them left and right during closing and rebuttal arguments, and that didn't happen. I think what they're arguing is you're referencing that call that contained all the false statements. You're referencing perhaps not the particular statements that you had somebody testify that they saw no evidence of, but you're referencing the call, he's my guy, the other statements that were made. I think that's the concern that was raised. We understood the briefing to be a little bit different than that, but I do take the point. We did reference the call where Singer said that Bavic was his guy, but what we didn't do was repeat the reasons in that call that were suggested that he was his guy. The jury here was presented with two very clear theories about how it was that Bavic was his guy. It was payments to the university accounts and tuition payments. The jury then heard evidence elicited from the government's own witnesses that the specific statements about putting people on the books or paying invoices were false. All of this is happening in the context of a trial in which even the government, in its opening statement, specifically acknowledged this man lies, he makes things up and then continue onward. At every juncture, the jury is being told that they cannot take what Singer said at face value. I just don't think there's any basis for concluding that evidence that the government itself, through its own witnesses, proved was false and came from a man who all parties agreed was quite the con man, that somehow the jury was going to reach out and believe those particular statements to be true. Just one more question, Counselor. In your brief, you spend time saying that the district court, in evaluating the Rule 33 motion, used the wrong standard of review. The court should have scrutinized the motion through a plain air analysis, but you haven't spoken about that today during oral argument. Well, because our view is that you don't even need the overlay of plain air to find that the government did not misstate the law or the facts. Again, that particular question is de novo and encompasses consideration of the overall context. So you're not requesting that we remand it then for the court to conduct a plain air analysis? No, because first of all, we believe that there were no misstatements, plain or otherwise. And second of all, there would be no need for remand, even though we believe the district court didn't conduct the Poison the Well inquiry. There's no reason to remand where the result of that inquiry we submit is clear on this record. Any further questions? Thank you very much, Counselor. That concludes arguments in this case.